NOT FOR PUBLICATION                                              [Dkt. No. 1]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| MICHELLE EGAN,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | Civil No. 10-5150 (RMB)<br><br>**OPINION** |

Appearances:

    Richard L. Frankel
    Boss & Group, PA
    102 Browning Lane, Building C-1
    Cherry Hill, NJ 08003
        Attorneys for Plaintiff

    Susan Reiss
    Special Assistant U.S. Attorney
    Office of General Counsel
    Social Security Administration
    26 Federal Plaza, Room 3904
    New York, New York 10278
        Attorneys for Defendant

**BUMB**, United States District Judge:

    Plaintiff Michelle Egan appeals the final decision of Defendant Social Security Commissioner denying her disability benefits.  For the reasons that follow, that decision is AFFIRMED, in part, and REMANDED for further proceedings consistent with this opinion.

1

I.   Background

   A.   Procedural

Plaintiff filed for disability on February 8, 2006, claiming that she became disabled as of September 7, 2005. Plaintiff's immediate prior job was as a driving instructor. Plaintiff's claim was initially premised largely on wrist pain and back problems. Her initial request for disability was denied on October 25, 2006. Plaintiff filed a request for reconsideration on December 30, 2006. That request was denied on May 1, 2007. Almost two months later, on June 15, 2007, Plaintiff requested a hearing before an Administrative Law Judge. A hearing was held on October 15, 2008 before Administrative Law Judge Daniel W. Shoemaker, Jr. (the "ALJ"). At the hearing, Plaintiff also presented evidence that fibromyalgia, first diagnosed shortly after the hearing was requested, also contributed to her claimed disability. On January 27, 2009 the ALJ issued a decision concluding that Plaintiff was not disabled.

   B.   The ALJ's Findings

Pursuant to Social Security Administration regulation, the ALJ conducted a five-part test to determine disability. Those steps are discussed in more detail below. At step one, he found that Plaintiff had not engaged in substantial gainful activity. At step two, he found that Plaintiff was severely impaired as a

2

result of fibromyalgia, DeQuervain's syndrome of both wrists, and residuals of right dominant wrist syndrome.  At step three, he concluded that Plaintiff's impairment did not amount to an impairment listed in the Code of Federal Regulations, which would automatically qualify her as disabled.  Finally, at step four, the ALJ concluded that Plaintiff had the residual functioning capacity to perform the full range of light work and was therefore capable of returning to her old job as a driving instructor and not disabled.

    C.   The Evidence Before The ALJ

The ALJ's conclusions were based on documentary evidence, as well as live testimony.

The Plaintiff presented evidence that she saw a physician on September 26, 2005 complaining of pain on both hands and exhibiting decreased range of motion in both hands.  Plaintiff expressed similar complaints in an October 6, 2005 visit, at which she also showed decreased range of motion in her right wrist.  On a follow-up visit on November 7, 2005, the Plaintiff again reported wrist pain and examination revealed tenderness and decreased range of motion.  Plaintiff's follow-up visit on January 20, 2006 was more of the same and Plaintiff was also diagnosed with DeQuervain's syndrome.  That same month, Plaintiff enrolled in community college and began taking classes.

On February 14, 2006, Plaintiff underwent an orthopedic examination by Dr. David A. Fuller.  Dr. Fuller noted tenderness, swelling, and a positive Finkelstein test.  He diagnosed the Plaintiff with status post lunate triquetrum fusion of the right wrist and DeQuervain's syndrome and administered cortisone injections.  In a follow-up visit with Dr. Fuller on March 28, 2006, he noted decreased swelling and a negative Finkelstein test.

On April 29, 2006, Plaintiff completed a Social Security Administration questionnaire regarding her claimed disability.  In the questionnaire, Plaintiff describes her average day as waking up very early to "do [her] ADA's then take care of [her] daughter.  Open the back door, let out the dogs, make coffee. feed baby.  drive to sitters, go to college, study, write papers so my mom can type them for me, finish classes pick up baby, drive home, put dogs out, feed baby, make dinner, dishes if possible, nap (if poss.), study[.]"  The questionnaire also indicates that Plaintiff prepared meals daily, read daily, watched two hours of television a day, went dancing once a month, and cooked, baked, and shopped as needed.  She also regularly went grocery shopping, attended church, school, doctors offices, and visited family and friends.  On the form, Plaintiff claimed it was difficult for her to lift anything without pain and she could not stand, sit, or walk for very

4

long.

On August 23, 2006, Plaintiff was examined by Dr. Nithyashuba Khona.  Dr. Khona noted that Plaintiff did not appear to be in any "acute distress," there were no abnormal findings except for slightly decreased range of motion of Plaintiff's right wrist, and that Plaintiff functioned with the use of both arms and performed tasks that required hand and wrist movements.  Dr. Khona observed that Plaintiff was able to walk on her toes and heels and required no help getting on and off the examining table. Dr. Khona also noted that Plaintiff was able to shower, do laundry, and dress herself.  She was also able, according to Dr. Khona's notes, to take care of her 9-month old child, which required constant hand and wrist movements for changing diapers, feeding, and carrying the baby from one place to another.

On June 26, 2007, Plaintiff was diagnosed with probable fibromyalgia by Dr. Brian L. Grimmett, a rheumatologist. Follow-up visits in July, August, October, and December of 2007 confirmed this diagnosis.

On April 25, 2008, Dr. Charles P. Catania examined Plaintiff.  In his report, Dr. Catania noted that Plaintiff had a physical disability that prevented her from standing for more than 30 minutes, sit for long periods, drive for more than 100 minutes, and generally affecting her ability to work.  Dr.

Catania also completed a supplemental "Medical Source Statement" on April 28, 2008. That statement indicated that Plaintiff's condition would keep her out of work more than 3-4 days per month, that physical activity greatly increased Plaintiff's pain, that Plaintiff would need supine rest for at least 1-2 hours 1-2 days per week, and that Plaintiff's pain and fatigue would frequently interfere with her attention and concentration at work.

During the administrative hearing, on October 15, 2008, the Plaintiff presented testimony from herself, as well as her mother - Betty Egan - and friend - Noelle Pool. Plaintiff testified that she drives four days a week, but has to limit her driving because it is painful and uncomfortable. She also testified that she often dropped things and had a high degree of difficulty lifting and carrying objects, to the extent that it often took two hands to lift milk out of the refrigerator. According to Plaintiff, sitting, standing, or walking for any extended period caused her extreme discomfort and she could not stand for more than 10-15 minutes at a time or walk more than a block or two. She testified that she required assistance to carry heavy objects after she shops for groceries. Ms. Egan testified that she could not type for more than half an hour a day and that she could not take handwritten notes for an extended period of time. Plaintiff testified that, while she

6

was able to attend class at college, she was generally permitted to stand up or walk out of the class if need be. Plaintiff testified that cleaning the house by herself is too difficult for her and that she requires, and receives, assistance from a friend. Plaintiff disputed Dr. Khona's conclusion that she was able to care for her baby normally, indicating that she used a sling and carriage to transport her baby. Plaintiff testified that she could not carry her school books and instead had to rely on a backpack on wheels. Finally, Plaintiff testified that she was unable to take her daughter to Story Book Land because she would need, and did not want to use, a wheelchair to move throughout the park.

Betty Egan testified that there were days when her daughter could not get up the steps when she came home from school and that she could no longer dance as she had in the past. Ms. Pool testified that: Plaintiff is often fatigued; Plaintiff has trouble with basic tasks like removing a roast from the oven; Ms. Pool would be very concerned with Plaintiff's ability to work everyday; Ms. Pool often has to help Plaintiff with homework; and that another of Plaintiff's friends often assists Plaintiff with bathing her child.

II. Standard of Review

This Court reviews both the legal and factual decisions of the Social Security Commissioner. Legally, the Court reviews

7

whether the administrative determination was made upon application of the correct legal standards. See Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir.1983). The Court's review of legal issues is plenary. Sykes, 228 F.3d at 262 (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999)).

In contrast, the Court reviews the factual decisions of the Commissioner with greater deference and must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir.2000). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quotation and citation omitted)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir.1999). Where such evidence supports the ALJ's findings of fact, the Court is bound by the Commissioner's findings, "even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir.2001) (citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir.1999)). Thus, this Court must "review the evidence in its totality, but where it is susceptible of more than one rational interpretation, the Commissioner's conclusion must be upheld." Ahearn v. Comm'r of

Soc. Sec., 165 Fed. Appx. 212, 215 (3d Cir.2006) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.1984); Monsour Med. CR. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir.1986)).

Where the Commissioner is faced with conflicting evidence, however, "he must adequately explain in the record his reason for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F.Supp. 273, 278 (M.D.Pa.1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir.1986)). Stated differently:

> [U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational. Gober v. Matthews, 574 F.2d 772, 776 (3d Cir.1978) (quotation and citation omitted); see also Guerrero v. Comm'r of Soc. Sec., Civ. No. 05-1709, 2006 WL 1722356, *3 (D.N.J. June 19, 2006) (stating that it is the ALJ's responsibility "to analyze all the evidence and to provide adequate explanations when disregarding portions of it"), aff'd, 249 Fed. Appx. 289 (3d Cir.2007).

While "[t]here is no requirement that the ALJ discuss in [the] opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 Fed. Appx. 130, 133 (3d Cir. 2004), the ALJ must review and consider all pertinent medical and non-medical evidence and "explain [any] conciliations and rejections." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 122 (3d Cir. 2000); see also Fargnoli, 247 F.3d at 42 ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case where the claimant ... has voluminous medical

9

records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law.").

III. Analysis

At issue here is the Commissioner's finding that Plaintiff was not disabled under the law. The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). The Third Circuit had laid out the Commissioner's inquiry at each step of this analysis as follows:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).
>
> In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.
>
> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir.1994).
>
> If the claimant is unable to resume her former

>occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir.1984).

Plummer, 186 F.3d at 428.

Here, as described above, the ALJ found at step 4 that Plaintiff retained the residual functional capacity to return to her prior job as a driving instructor. Plaintiff argues that this finding was not supported by substantial evidence. Specifically, Plaintiff contends that the Commissioner's finding failed to properly consider: (1) the opinion of Dr. Catania; (2) Plaintiff's non-exertional limitations; (3) Plaintiff's fibromyalgia; and (4) the testimony of Plaintiff, her mother, and her friend.

This evidence, though acknowledged by the ALJ, was largely discounted, with the ALJ rejecting Dr. Catania's functional capacity assessment. The ALJ found that the evidence was contrary to the May 1, 2006 questionnaire completed by the Plaintiff and August 23, 2006 medical examination by Dr. Khona – both of which suggested, according to the ALJ, that Plaintiff

11

was able to maintain a higher activity level than claimed at the hearing and by Dr. Catania.  The ALJ also found that Dr. Catania was not the treating physician and that his "minimal findings on examination" did not support his disability determinations.  The ALJ's analysis was flawed.

    The ALJ ignored the fact that Dr. Khona's examination and the questionnaire were completed in 2006, roughly one year prior to Plaintiff's diagnosis of fibromyalgia in June 2007 and roughly two years prior to Dr. Catania's April 2008 examination, and the October 15, 2008 administrative hearing at which testimony as to Plaintiff's condition was taken.  That 2006 health data could be, in some ways, inconsistent with 2008 data is not particularly meaningful.  2006 health data is not, as a general matter, probative of 2008 health.  And it is particularly suspect where, as here, the individual is diagnosed with a new medical disorder in the interim.  See generally Collins v. Apfel, 31 F. Supp. 2d 1057, 1060 (N.D.Ill. 1998)(rejecting ALJ's dismissal of endocrinologist's report where the report and the plaintiff's testimony were "fresh" and the only contrary medical evidence was "stale" at the time of the hearing and noting that "[m]edical conditions . . . can change dramatically over time").

    The evidence from Dr. Catania's 2008 examination, whether regarded as treating physician evidence or not, suggests a

12

higher level of impairment than found by the ALJ. The evidence presented at the hearing was consistent with Dr. Catania's determination. That evidence was that, although Plaintiff was able to attend college, drive, and take care of her children and home, she required substantial assistance and accommodation and struggled to do so. Because the 2006 evidence was the only evidence potentially inconsistent with Dr. Catania's opinion, and was of dubious value with respect to 2008 health, the ALJ effectively substituted his own judgment against that of competent medical evidence from a physician in rejecting Dr. Catania's conclusions. This is not permitted. Plummer, 186 F.3d at 429 ("[A]n ALJ is not free to employ her own expertise against that of a physician who presents competent medical evidence."). The ALJ's determination as to Plaintiff's residual functional capacity following Dr. Catania's examination was therefore not supported by substantial evidence. The Court will therefore remand this case for further proceedings as described below.

However, the 2006 data cited by the ALJ does provide substantial evidence in support of the ALJ's conclusion as to Plaintiff's residual functional capacity prior to Dr. Catania's 2008 examination. Plaintiff submitted medical evidence establishing other medical problems prior to her diagnosis of fibromyalgia and Dr. Catania's examination. That evidence, and

13

Plaintiff's subsequent fibromyalgia diagnosis, was acknowledged by the ALJ. Plaintiff failed to point to any objective evidence, however, establishing an impairment to the extent alleged by Plaintiff during this time period. Prior to Dr. Catania's April 2008 opinion, Plaintiff's objective evidence of impairment was largely confined to wrist issues. And, as found by the ALJ, the level of impairment claimed by Plaintiff for at least part of the time period is objectively contradicted by Dr. Khona's report, which shows only minimal impairment.

That leaves Plaintiff primarily reliant on subjective complaints of pain and functional limitations. To the extent the ALJ did not credit Plaintiff's subjective complaints of pain and functional limitations, that decision was permissible. The ALJ found, and was permitted to find, that the activity level described in the April 2006 questionnaire and in Dr. Khona's August 2006 report, in which Plaintiff reported that she reads, takes care of her baby and dog, prepares meals, drives, attends school and writes papers, cleans and dresses herself, regularly visits family and church, and dances once a month, were inconsistent with Plaintiff's claimed impairment. <u>Milano v. Comm'r of Soc. Sec. Admin.</u>, 152 F. App'x 166, 170 (3d Cir. 2005)(holding that the ALJ could consider, among other things, the plaintiff's daily activities in determining the extent to which subjective complaints of pain and functional limitations

14

are credited).  The ALJ also found, and was permitted to find, that in light of Plaintiff's activity level and Dr. Khona's objective findings, Plaintiff's subjective complaints were of diminished credibility generally.  Boyce v. Barnhart, 66 F. App'x 297, 299-300 (3d Cir. 2003)(finding that subjective complaints' credibility could be diminished based on finding that complainant's "general credibility" was suspect).

IV. Conclusion

The Court AFFIRMS the Commissioner's decision that, prior to Dr. Catania's opinion, Plaintiff failed to demonstrate that she was disabled.  The Court REMANDS this matter for further proceedings to determine Plaintiff's residual functional capacity following Dr. Catania's opinion and whether, following the issuance of that opinion, she qualified as disabled.

Dated: December 29, 2011          s/Renée Marie Bumb
                                  RENÉE MARIE BUMB
                                  United States District Judge

15